JUDGE CEDARBAUM    10 CV 4082

**Outten & Golden LLP**
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**Burr & Smith, LLP**
Sam J. Smith (*pro hac vice* application
forthcoming)
Marguerite M. Longoria (*pro hac vice*
application forthcoming)
Loren Donnell (*pro hac vice* application
forthcoming)
442 W. Kennedy Blvd., Suite 300
Tampa, Florida 33606
Telephone: 813-253-2010

**Lee & Braziel, LLP**
J. Derek Braziel (*pro hac vice* application
forthcoming)
Meredith Matthews (*pro hac vice* application
forthcoming)
1801 North Lamar Street, Suite 325
Dallas, Texas 75202
Telephone: 214-749-1400



# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO DIAZ, MICHAEL FRATACCI, RAHEEN JACKSON, and ANTHONY PEREZ, individually and on behalf all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>EASTERN LOCATING SERVICE INC., EASTERN LOCATING SERVICE OF NY INC., EUS COMMUNICATIONS INC., RICHARD PERAGALLO, KENNETH SAMU, and LORRAINE SAMU,<br><br>       Defendants. | **CLASS ACTION COMPLAINT** |

Plaintiffs, Roberto Diaz, Michael Fratacci, Raheen Jackson, and Anthony Perez,

(collectively "Plaintiffs"), individually and on behalf of all others similarly situated as class

representatives, by their attorneys Outten and Golden LLP, Burr & Smith, LLP and Lee &

Braziel, LLP, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1.      Eastern Locating Service, Inc. ("ELS"), Eastern Locating Service of NY Inc. ("ELS NY") and EUS Communications Inc. ("EUS"), Richard Peragallo ("Peragallo"), Kenneth Samu ("Kenneth Samu") and Lorraine Samu ("Lorraine Samu") (collectively "Eastern") own and operate an enterprise that has provided services including locating and markout of underground utility lines in the general vicinities of Manhattan and the Bronx, New York, New York.

2.      Upon information and belief, during the period between July 3, 2003 and February 28, 2010 ("Liability Period"), Eastern has employed numerous individuals as "Locators" and "Locator Helpers", including plaintiffs, to perform locating and markout services.

3.      Throughout the Liability Period, Eastern has not tracked or recorded the hours worked by Locators and Locator Helpers per day or per week, nor has it directed Locators and Locator Helpers to report their hours worked per day or per week.

4.      Typically, Locators and Locator Helpers work substantially in excess of ten hours per day and forty hours per week for Eastern.

5.      Throughout the Liability Period, Eastern has not paid Locators and Locators Helpers with an overtime premium equivalent to one and one-half times their regular rate of pay for hours worked in excess of forty per week.

6.    Throughout the Liability Period, Eastern has solely compensated Locators and Locator Helpers by paying them a flat fee per locate, thus paying them pursuant to a "piece rate" reflecting the number of locates performed.

7.    Throughout the Liability Period, Eastern has compensated Locators at a higher rate for each locate completed above a threshold number per week than for tickets completed below the threshold.

8.    Locators and Locator Helpers employed by Eastern do not receive any regular salary or hourly rate compensation in addition to their piece rate compensation.  Any additional payments or premiums paid to Locators and Locator Helpers are based upon performance, not based on the number of hours actually worked.

9.    Throughout the Liability Period, Eastern has engaged in a policy and practice of deducting sums from the compensation of Locators and Locator Helpers to recoup monies for damages, equipment loss or damage, parking tickets and related fees without the Locators' authorization.  Such deductions are not for the benefit of the employees and are not recorded as deductions on the compensation records of the Locators.  As a result of Eastern's compensation policies, *i.e.*, the level of the piece rate and the number of hours worked and/or unlawful deductions from compensation, Locators and Locator Helpers do not always receive minimum wage compensation required under New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"), for all their hours worked per week.

10.    Eastern has deprived Locators and Locator Helpers of overtime compensation at the applicable overtime rate of one and one-half times their regular rate for hours worked in excess of forty per week and "spread of hours pay" of one hour's pay at minimum wage for each day the Locators and Locator Helpers worked a spread of ten or more hours per day.

11.     By the conduct described in this Complaint, Eastern willfully violated the FLSA and the NYLL during the Liability Period as to its employees, including Plaintiffs and other Locators and Locator Helpers, by failing to record and maintain a record of hours worked, making unlawful deductions from compensation, failing to provide "spread of hours" pay for days on which Locators and Locator Helpers worked more than ten hours per day, failing to pay proper minimum wages, and failing to pay overtime wages for hours worked in excess of forty per week at one and one-half times the regular rate as required by law.

## NATURE OF THE ACTION

12.     This action is brought to recover unpaid wages owed to Plaintiffs and all other similarly situated current and former Locators and Locator Helpers employed by Eastern as well as injunctive and declaratory relief against Eastern's unlawful actions, and attorneys' fees and costs.

13.     Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees of Eastern who elect to opt in to this action pursuant to the FLSA, and specifically the collective action provision at 29 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Eastern, including violations of the recordkeeping, minimum wage and overtime provisions.

14.     Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Eastern, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of the wage and hour provisions of the NYLL Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations by Eastern, including violations of the record keeping, minimum wage, overtime, and "spread of hours" provisions, and laws regulating unauthorized deductions from

compensation.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

16.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a). A substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

**The Plaintiffs**

***Roberto Diaz***

18.    Roberto Diaz ("Diaz") is an adult individual who is a resident of the Bronx, New York.

19.    Diaz was employed as a Locator by Eastern in New York, New York, from approximately April 2003 until approximately May 2005 and from approximately March 2007 until approximately January 2008.

***Michael Fratacci***

20.    Michael Fratacci ("Fratacci") is an adult individual who is a resident of the Bronx, New York.

21.    Fratacci was employed as a Locator and Locator Helper by Eastern in New York, New York from approximately 2002-2003, and employed as a Locator in New York, New York, from approximately December 2007 to approximately October 2008.

***Raheen Jackson***

22.    Raheen Jackson ("Jackson") is an adult individual who is a resident of the Bronx, New York.

23.    Jackson was employed as a Locator Helper by Eastern in New York, New York from approximately October 2006 until approximately October 2007. Jackson was employed by Eastern as a Locator in New York, New York, from approximately October 2007 until approximately August 2008.

***Anthony Perez***

24.    Anthony Perez ("Perez") is an adult individual who is a resident of the Bronx, New York.

25.    Perez was employed as a Locator Helper by Eastern in New York, New York, from approximately April 2007 until approximately April 2008. Perez was employed by Eastern as a Locator in New York, New York from April 2008 until approximately October 2008.

26.    At all relevant times, all Plaintiffs were "employees" within the meaning of 29 U.S.C. § 203(e).

27.    During the Liability Period, all Plaintiffs were "employees" within the meaning of NYLL.

28.    At all relevant times, all Plaintiffs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 207.

29.    All Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

**The Defendants**

### *Eastern Locating Service, Inc.*

30.    Defendant ELS is a domestic business corporation, registered in the State of New York doing business during the Liability Period in New York, New York and surrounding areas, including but not limited to Manhattan and the Bronx.

31.    ELS maintains its corporate headquarters in New York.

32.    During the Liability Period ELS was an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL.

33.    At all times material hereto, ELS was an "enterprise[s] engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1) with annual gross sales in excess of $500,000 within the meaning of the FLSA.

### *Eastern Locating Service of NY Inc.*

34.    Defendant ELS NY is a domestic business corporation, registered in the State of New York and doing business during the Liability Period in New York, New York and surrounding areas.

35.    ELS NY maintains its corporate headquarters in New York.

36.    During the Liability Period, ELS NY was an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL.

37.    At all times material hereto, ELS NY was an "enterprise[s] engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1) with annual gross sales in excess of $500,000 within the meaning of the FLSA.

### EUS Communications Inc.

38.     EUS is a New Jersey domestic profit corporation with oversight, dominion, control and direction over the daily operations of ELS and ELS NY.

39.     Upon information and belief, Defendant EUS has done business throughout the Liability Period, through its subsidiaries ELS and ELS NY in the vicinity of New York, New York, including but not limited to Manhattan and the Bronx.

40.     During the Liability Period, EUS was an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and New York Labor Law.

41.     At all times material hereto, EUS was an "enterprise[s] engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1) with annual gross sales in excess of $500,000 within the meaning of the FLSA.

### Richard Peragallo

42.     Defendant Richard Peragallo was an owner, officer and/or operator of ELS during the Liability Period.

43.     Peragallo was an officer and/or operator of ELS NY during the Liability Period.

44.     Peragallo was an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and NYLL.

45.     Peragallo acted in the interest of Eastern in relation to Plaintiffs and similarly situated employees during the Liability Period.

46.     Peragallo possessed the power to control Plaintiffs and similarly situated employees during the Liability Period.

47.     Peragallo possessed the power to supervise and control employee work schedules and conditions of employment during the Liability Period.

48.     Peragallo possessed the power to determine the rate and method of Plaintiffs' and similarly situated employees' payment during the Liability Period.

49.     Peragallo possessed the power to maintain Plaintiffs' and similarly situated employees' employment records during the Liability Period.

50.     Peragallo possessed the power to control terms and conditions of Plaintiffs' and similarly situated employees' employment during the Liability Period.

51.     Peragallo possessed the power to determine employee policies that apply to Plaintiffs and similarly situated employees, including, but not limited to compensation policies during the Liability Period.

52.     Peragallo possessed the power to hire and fire employees including Plaintiffs and similarly situated employees during the Liability Period.

*Kenneth Samu*

53.     Defendant Kenneth Samu was an officer, owner, and/or operator of EUS, during the Liability Period.

54.     Kenneth Samu was the Chairman or Chief Executive Officer, owner, and/or operator of ELS during the Liability Period.

55.     Kenneth Samu was the Chairman or Chief Executive Officer, owner, and/or operator of ELS NY during the Liability Period.

56.     Upon information and belief, during the Liability Period, Kenneth Samu participated in and oversaw Eastern's financial decisions including but not limited to Locator compensation issues, bidding for contracts, purchasing fleet vehicles, selecting types of vehicles, and purchasing laptop computers for employees.

57.     During the Liability Period Kenneth Samu was an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and New York Labor Law.

58.     Kenneth Samu acted in the interest of Eastern in relation to Plaintiffs and similarly situated employees during the Liability Period.

59.     Kenneth Samu possessed the power to control Plaintiffs and similarly situated employees during the Liability Period.

60.     Kenneth Samu possessed the power to supervise and control employee work schedules and conditions of employment during the Liability Period.

61.     Kenneth Samu possessed the power to determine the rate and method of Plaintiffs' and similarly situated employees' payment during the Liability Period.

62.     Kenneth Samu possessed the power to maintain Plaintiffs' and similarly situated employees' employment records during the Liability Period.

63.     Kenneth Samu possessed the power to control terms and conditions of Plaintiffs' and similarly situated employees' employment during the Liability Period.

64.     Kenneth Samu possessed the power to determine employee policies that apply to Plaintiffs and similarly situated employees, including, but not limited to compensation policies during the Liability Period.

65.     Kenneth Samu possessed the power to hire and fire employees including Plaintiffs and similarly situated employees during the Liability Period.

***Lorraine Samu***

66.     Defendant Lorraine Samu was the Chief Executive Officer, owner, and/or operator of EUS, during the Liability Period.

10

67.    Upon information and belief, during the Liability Period, Lorraine Samu, in her capacity as Chief Executive Officer, owner and operator of EUS, was responsible for and managed daily billing, bookkeeping, accounts receivable and payroll matters for ELS and ELS NY.

68.    During the Liability Period, Lorraine Samu was an "employer" and/or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and New York Labor Law.

69.    Lorraine Samu acted in the interest of Eastern in relation to Plaintiffs and similarly situated employees during the Liability Period.

70.    Lorraine Samu possessed the power to control Plaintiffs and similarly situated employees during the Liability Period.

71.    Lorraine Samu possessed the power to supervise and control employee work schedules and conditions of employment during the Liability Period.

72.    Lorraine Samu possessed the power to determine the rate and method of Plaintiffs' and similarly situated employees' payment during the Liability Period.

73.    Lorraine Samu possessed the power to maintain Plaintiffs' and similarly situated employees' employment records during the Liability Period.

74.    Lorraine Samu possessed the power to control terms and conditions of Plaintiffs' and similarly situated employees' employment during the Liability Period.

75.    Lorraine Samu possessed the power to determine employee policies that apply to Plaintiffs and similarly situated employees, including, but not limited to compensation policies during the Liability Period.

11

76.    Lorraine Samu possessed the power to hire and fire employees including Plaintiffs and similarly situated employees during the Liability Period.

**Single Integrated Enterprise**

77.    ELS, ELS NY, and EUS are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

78.    ELS, ELS NY, and EUS share office facilities and company vehicles.

79.    Kenneth Samu and Lorraine Samu participate in the operations of ELS, ELS NY, and EUS.

80.    Richard Paragallo participates in the operations of ELS, ELS NY, and EUS.

81.    ELS, ELS NY, and EUS share employment policies, practices, and procedures.

82.    ELS, ELS NY, and EUS communicate employment policies, practices, and procedures verbally and do not use or distribute employee handbooks, policy memoranda, or other written documentation of their policies, practices and procedures.

83.    ELS, ELS NY, and EUS have employed some of the same managers and personnel.

84.    There is a common management among ELS, ELS NY, and EUS.

85.    There is a centralized control of labor relations among ELS, ELS NY, and EUS.

86.    There is common ownership of ELS, ELS NY, and EUS

87.    There is an interrelation of operations of ELS, ELS NY, and EUS.

88.    ELS, ELS NY, and EUS had substantial control over Plaintiffs' and similarly situated workers' working conditions, compensation, work schedules, and the unlawful polices and practices alleged herein.

## CLASS AND COLLECTIVE ALLEGATIONS

89.     Plaintiffs bring FLSA claims on behalf of themselves and all similarly situated persons who work or have worked for Eastern as Locators and Locator Helpers who elect to opt in to this action (the "FLSA Collective").

90.     Eastern is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs.  Upon information and belief, there are many similarly situated current and former Eastern Locators and Locator Helpers who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated Locators and Locator Helpers are known to Eastern, are readily identifiable, and can be located through Eastern's records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

91.     Plaintiffs also bring NYLL claims on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of "all persons who work or have worked for Eastern as Locators and/or Locator Helpers between July 3, 2003 to January 5, 2010 (the "Rule 23 Class").

92.     The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Eastern.

93.     Eastern has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

94.    There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

a.    whether Eastern failed to keep true and accurate time records for all hours worked by Plaintiffs and the Rule 23 Class;

b.    what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

c.    whether Eastern failed and/or refused to pay Plaintiffs and the Rule 23 Class minimum wage for all hours worked within the meaning of NYLL Article 19, § 652 (1);

d.    whether Eastern failed and/or refused to pay Plaintiffs and the Rule 23 Class one additional hour's pay at the minimum hourly wage rate for each day during which they worked a spread of more than 10 hours in compliance with the NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

e.    whether Eastern unlawfully deducted sums from the compensation of Locators and Locator Helpers;

f.    whether Eastern failed and/or refused to pay Plaintiffs and the Rule 23 Class overtime pay for all overtime hours worked within the meaning of NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

g.    the nature and extent of Rule 23 Class-wide injury and the appropriate measure of damages for the class;

14

h.  whether Eastern's policy not to pay minimum wages reflecting the total number of hours worked per week was done willfully or with reckless disregard of NYLL;

i.  whether Eastern's policy of denying "spread of hours pay" was done willfully or with reckless disregard of NYLL;

j.  whether Eastern's policy of making unlawful deductions from compensation was done willfully or with reckless disregard of NYLL; and

k.  whether Eastern's policy not to pay overtime wages based upon the number of hours worked per week was done willfully or with reckless disregard of NYLL.

95.  The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the Rule 23 class work or have worked for Eastern as Locators and Locator Helpers and have not been paid minimum wages and/or overtime wages for all hours worked per week. Defendant has acted and refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

96.  Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.

97.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage and hour litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Eastern's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared with

the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Eastern's practices.

## CLASSWIDE FACTUAL ALLEGATIONS

98.     All of the work that Plaintiffs, the members of the FLSA Collective, and the members of the Rule 23 Class (collectively "Class Members") have performed has been assigned by Eastern and/or Eastern has been aware of all the work that Plaintiffs and the Class Members have performed.

99.     During the Liability Period, it has been Eastern's policy and pattern or practice to pay Locators compensation solely based upon the number of "tickets" or locates completed per week.

100.     During the Liability Period, it has been Eastern's policy and pattern or practice to pay Locator Helpers compensation solely based upon the number of "tickets" or locates completed per week.

101.     During the Liability Period, it has been Eastern's policy and pattern or practice not to track the number of hours worked per week by Locators.

102.     During the Liability Period, it has been Eastern's policy and pattern or practice not to track the number of hours worked per week by Locator Helpers.

103.     During the Liability Period, it has been Eastern's policy and pattern or practice to solely pay Locator Helpers a flat fee or piece rate for each locate performed per week, regardless of the number of locates performed without any premium for hours worked in excess of forty per week.

104.    During the Liability Period, it has been Eastern's policy and pattern or practice to pay Locators a flat fee or piece rate per locate per week which increased slightly for remaining locates upon completing a threshold number of locates per week.

105.    For each week in which a Locator completes more than the threshold number of locates per week, Eastern pays Locators what it characterizes on employee check stubs as "overtime" by multiplying ten percent of the regular unit rate by the threshold number of locates.

106.    The amount of time it takes to complete a locate varies significantly based upon a variety of factors, including, but not limited to, the type of locate(s) to be performed for each ticket, travel time between locates, quantity of "emergency" or "priority" locates, geographic location of the locate, and whether ticket is for a residential locate or a locate that must be completed in traffic.

107.    The increased premium Eastern paid Locators for locates performed in excess of the arbitrary threshold each week does not reflect an overtime premium based upon hours worked per week.

108.    Upon information and belief, Eastern has been aware that Locators and Locator Helpers are non-exempt employees entitled to a minimum wage and an overtime premium under the FLSA and the NYLL.

109.    As part of its regular business practice, Eastern has intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice includes but is not limited to:

      a.  willfully failing to record the time that its employees, including Plaintiffs and the Class Members, have worked for the benefit of Eastern;

b.  willfully failing to keep payroll records with respect to Plaintiffs and the Class Members as required by the FLSA and NYLL;

c.  willfully failing to pay Plaintiffs and the Class Members minimum wage for all hours worked as required by the FLSA and NYLL;

d.  willfully and unlawfully deducting sums from Plaintiffs' and the Class Members' wages for the benefit of Eastern in order to recoup damages, parking fines and other losses, and to penalize Plaintiffs and the Class Members;

e.  willfully failing to pay Plaintiffs and the Class Members "spread of hours" pay of one additional hour's pay at the minimum hourly wage rate for each day during which Plaintiffs and the Class Members worked a spread of more than 10 hours;

f.  willfully failing to pay Plaintiffs and the Class Members overtime wages for all hours that they worked in excess of 40 hours per week as required by the FLSA and NYLL.

110.    Upon information and belief, Eastern's unlawful conduct described in this complaint is pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA and NYLL.

111.    Eastern has consistently and repeatedly imposed its compensation per ticket pay scheme without regard to hours worked on all of the Plaintiffs and Class Members during the Liability Period.

## PLAINTIFFS' FACTUAL ALLEGATIONS

112.    Locator Helpers including the Plaintiffs employed by Eastern all perform similar job duties in that they are required by Eastern to travel with a Locator to various location sites in order to receive training and assist to locate and mark underground utilities.

113.    Locators employed by Eastern including the Plaintiffs all perform similar job duties in that they are required by Eastern to travel to different locations in order to locate and mark underground utilities.

114.    Eastern did not track, record, or require Locator Helpers including the Plaintiffs to record the number of hours worked each day or week.

115.    Eastern did not track, record, or require Locators including the Plaintiffs to record, the number of hours worked each day or week.

116.    Plaintiffs and Class Members were compensated by Eastern based upon the number of tickets completed per week.

117.    Plaintiffs and Class Members were paid a set amount for each ticket completed, regardless of the number of hours worked.

118.    Plaintiffs and Class Members typically worked in excess of forty hours per week and ten hours per day.

119.    Eastern paid Locator Helpers including the Plaintiffs a flat fee or piece rate for each ticket completed.

120.    Eastern paid Locators including the Plaintiffs a flat fee or piece rate which increased for remaining tickets upon reaching a threshold number of completed tickets per week.

19

121.    Eastern pays Locators including the Plaintiffs what it characterizes on employee paycheck stubs as "overtime" by multiplying ten percent of the regular unit rate by the threshold number of tickets.

122.    The increased premium Eastern paid Locators, including the Plaintiffs, for locates performed in excess of the arbitrary threshold each week does not reflect an overtime premium based upon hours worked per week.

123.    The increased compensation, which Eastern refers to as "overtime," is not based on the actual number of hours worked in a week but instead was based solely on the number of tickets completed.

124.    The number of tickets Plaintiffs and Class Members completed did not equate to a standard length of time worked, because, among other reasons, the length of time it took to complete a ticket varied significantly based upon a variety of factors including but not limited to the type of locate(s) to be performed for each ticket, travel time between locates, quantity of "emergency" or "priority" locates, geographic location of the locate, and whether a ticket was for a residential locate or a locate that had to be completed in traffic.

125.    If Eastern determined that a locate needed to be redone for any reason, including but not limited to instances in which a locator relied upon blueprints provided by Eastern that were incorrect or out of date, the locator was required to redo the locate and was not compensated for the time spent traveling to and from the locate site or redoing the locate.

**Eastern's Unlawful Practice of Deductions**

126.    As part of its regular business practice, Eastern has intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of making deductions from the compensation of Locators and Locator Helpers, not for the benefit of these employees, to recoup

monies spent for parking tickets, damages and/or lost equipment which occur and/or to penalize Plaintiffs and Class Members.

127.    Eastern effected such deductions by reducing the number of tickets for which the Locators or Locator Helpers are entitled to compensation. Eastern did not record the deductions on employees' check stubs.

### Eastern Failed to Keep Accurate Records

128.    Consistent with its policy and pattern or practice, Eastern failed to keep records of the hours worked by Locators and Locator Helpers as required by the FLSA and NYLL.

129.    Consistent with its policy and pattern or practice, Eastern did not provide Locators and Locator Helpers with a statement of wages reflecting and explaining deductions from pay each time it paid compensation to Plaintiffs and Class Members.

### Plaintiffs Were Not Paid Proper Minimum Wage

130.    Plaintiffs and Class Members employed by Eastern did not receive any regular salary or hourly rate compensation in addition to piece rate compensation.

131.    As a result of Eastern's compensation and deduction policies, pay periods occurred during which Plaintiffs and Class Members did not receive minimum wage compensation as required by the FLSA and NYLL.

132.    Eastern was or should have been aware that under the FLSA and NYLL Plaintiffs and Class Members are non-exempt employees entitled to earn at least minimum wage for all hours worked.

### Plaintiffs Were Not Compensated with Spread of Hours Pay

133.    Locators and Locator Helpers typically work in excess of ten hours per day.

134.    Eastern has failed to compensate Locators and Locator Helpers with an additional hour of minimum wage compensation for each day in which they worked in excess of ten per day as required by New York Labor Law.

### Plaintiffs Were Not Paid Proper Overtime Wage

135.    Plaintiffs and Class Members did not receive any regular salary or hourly rate compensation in addition to piece rate compensation and did not receive an overtime premium equivalent to one and one-half times their regular rate for hours worked over forty per week.

136.    Eastern was or should have been aware that under the FLSA and NYLL Locators and Locator Helpers are non-exempt employees entitled to an overtime premium at one and one-half times their regular rate for hours worked in excess of forty per week.

### Eastern's Violations of the FLSA and NYLL Were Willful

137.    Plaintiffs and Class Members have repeatedly complained to Eastern's directors and supervisors privately and during group meetings about Eastern's pay practices, including but not limited to its practice of unlawful deductions, failure to pay minimum wage, and failure to pay spread of hours pay and overtime wages, without any resulting change in policies. Typically, the response by Eastern's directors and supervisors has been words to the effect of: "This is the way we pay at Eastern, if you don't like it, there's the door," or similar words that conveyed the same meaning.

### FIRST CAUSE OF ACTION
#### (Fair Labor Standards Act – Minimum Wage)
#### (Brought on Behalf of Plaintiffs and all Members of the FLSA Collective)

138.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

139.    Eastern has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

140.    The minimum wage provisions set forth in 29 U.S.C. § 206 apply to Eastern.

141.    Eastern's failure to pay minimum wage in violation of the FLSA, as described in this Complaint, has been willful and intentional. Eastern has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and the Class Members.

142.    Because Eastern's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

143.    As a direct result of Eastern's willful violations of the FLSA, Plaintiffs and the Class Members have suffered damages by being denied minimum wages in accordance with 29 U.S.C. §§ 201 *et seq.*

144.    As a direct result of Eastern's unlawful acts, Plaintiffs and the Class Members have been deprived of minimum wage in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
**(Fair Labor Standards Act – Overtime Wage)**
**(Brought on Behalf of Plaintiffs and all Members of the FLSA Collective)**

145.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

146.    Eastern has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

147.    The maximum hours provisions set forth in 29 U.S.C. § 207 applies to Eastern.

148.    Eastern's failure to pay overtime premiums for hours worked in excess of forty per week by Plaintiffs and the Class Members, in violation of the FLSA, as described in this Complaint, has been willful and intentional.  Eastern has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and the Class Members.

149.    Because Eastern's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

150.    As a direct result of Eastern's willful violations of the FLSA, Plaintiffs and the Class Members have suffered damages by being denied overtime wages for hours worked in excess of forty per week in accordance with 29 U.S.C. §§ 207 *et seq.*

151.    As a direct result of the unlawful acts of Eastern, Plaintiffs and the Class Members have been deprived of overtime wages in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C.§ 216(b).

### THIRD CAUSE OF ACTION
**(New York Labor Law:  Unpaid Minimum Wages)**
**(Brought on Behalf of Plaintiffs and all Rule 23 Class Members)**

152.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

153.    The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Eastern.

154.    Eastern has failed to pay Plaintiffs and the Class Members the minimum wages to which they were entitled under NYLL.

24

155.   By Eastern's failure to pay Plaintiffs and the Class Members minimum wages, it has willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

156.   Due to Eastern's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Eastern their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**(New York Labor Law:  Unpaid Overtime Wages)**
**(Brought on Behalf of Plaintiffs and all Rule 23 Class Members)**

157.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

158.   The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Eastern.

159.   Eastern has failed to pay Plaintiffs and the Class Members the overtime wages for hours worked in excess of 40 hours per week to which they were entitled under NYLL.

160.   By Eastern's failure to pay Plaintiffs and the Class Members wages for hours worked in excess of 40 hours per week, it has willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

161.   Due to Eastern's violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Eastern their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### (New York Labor Law: Unlawful Deductions)
### (Brought on Behalf of Plaintiffs and all Rule 23 Class Members)

162.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

163.    The prohibitions on unlawful and unauthorized deductions not for the benefit of the employee contained in NYLL Article 6, § 193 and its supporting regulations apply to Eastern.

164.    Eastern has engaged in a policy and practice of making unlawful and unauthorized deductions for parking tickets, damages to equipment, and other deductions from the compensation of Plaintiffs and the Class Members in violation of NYLL Article 6, § 193.

165.    Eastern has also engaged in a policy and practice of failing to provide Locators and Locator Helpers with a statement of wages reflecting and explaining deductions each time it paid compensation to Plaintiffs and the Class Members.

166.    Eastern's policy and practice of making unlawful, unauthorized and unrecorded deductions from Locators' compensation not for the benefit of the Locators constitutes a willful violation of NYLL Article 6, § 193.

167.    Due to Eastern's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Eastern the amounts unlawfully deducted, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### (New York Labor Law: Spread of Hours Pay)
### (Brought on Behalf of Plaintiffs and all Rule 23 Class Members)

168.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

169.    Throughout the Liability Period, Eastern has failed to pay Plaintiffs and the Class Members "spread of hours pay" of one hour at the minimum wage rate for each day Plaintiffs and the Class Members worked a spread of 10 hours or more.

170.    Due to Eastern's violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Eastern the minimum wage payments of which they have been unlawfully deprived, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief:

A.    That at the earliest possible time, Plaintiffs be allowed to give notice of this collective action and claims brought pursuant to the FLSA, that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by Eastern as Locators and/or Locator Helpers. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied lawful wages.

B.    Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.* and the supporting United States Department of Labor regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiffs as representatives of the Rule 23 Class,

E.    Designation of counsel of record as Class Counsel;

F.    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL;

G.    Unpaid minimum wage pay pursuant to NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations;

H.    Unpaid "spread of hours pay" pursuant to NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations;

I.    Damages to compensate Plaintiffs and the Rule 23 Class for deductions from compensation made in violation of NYLL § 193.

J.    Unpaid overtime wages pursuant to NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations;

K.    Liquidated Damages under the NYLL for the Rule 23 class;

L.    Pre-judgment interest;

M.    An injunction requiring Eastern to pay all statutorily-required wages pursuant to NYLL;

N.    Attorneys' fees and costs of the action; and

O.    Such other relief as this Court shall deem just and proper.

Dated:    May 1 7    , 2010
          New York, New York

                              Respectfully submitted,

                              _____
                              Justin M. Swartz (JS 7989)

                              **Outten & Golden LLP**
                              Justin M. Swartz (JS 7989)
                              Ossai Miazad (OM 1127)
                              Outten & Golden LLP
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone:  212-245-1000

28

**Burr & Smith, LLP**
Sam J. Smith (*pro hac vice* application
forthcoming)
Marguerite M. Longoria (*pro hac vice* application
forthcoming)
Loren Donnell (*pro hac vice* application
forthcoming)
442 W. Kennedy Blvd., Suite 300
Tampa, Florida 33606
Telephone: 813-253-2010

**Lee & Braziel, LLP**
J. Derek Braziel (*pro hac vice* application
forthcoming)
Meredith Matthews (*pro hac vice* application
forthcoming)
1801 North Lamar Street, Suite 325
Dallas, Texas 75202
Telephone: 214-749-1400