**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

ROBERTO DIAZ, MICHAEL FRATACCI,
RAHEEN JACKSON, and ANTHONY PEREZ,
individually and on behalf all others similarly
situated,

                    Plaintiffs,

    v.

EASTERN LOCATING SERVICE INC.,
EASTERN LOCATING SERVICE OF NY INC.,
EUS COMMUNICATIONS INC., RICHARD
PERAGALLO, KENNETH SAMU, and
LORRAINE SAMU,

                    Defendants.

**1:10-cv-04082-JCF**

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF
     THIRTY-THREE AND ONE-THIRD PERCENT OF THE
     SETTLEMENT FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         A.  THE PERCENTAGE METHOD IS THE PREFERRED . . . .      3
             METHOD IN THE SECOND CIRCUIT FOR AWARDING
             ATTORNEYS' FEES IN COMMON FUND CASES

         B.  THE *GOLDBERGER* FACTORS SUPPORT CLASS
             COUNSEL'S FEE APPLICATION . . . . . . . . . . . . . . . . . . . . . . . 7

                 1.   Class Counsel's Time and Labor . . . . . . . . . . . . . . . . . . .   7

                 2.   Magnitude and Complexity of the Litigation . . . . . . . . . . .   10

                 3.   Risk of Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

                 4.   Quality of Representation . . . . . . . . . . . . . . . . . . . . . . . . .   13

                 5.   Fee in Relation to the Settlement . . . . . . . . . . . . . . . . . . .   15

                 6.   Public Policy Considerations . . . . . . . . . . . . . . . . . . . . . . .   17

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN
     AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE
     SETTLEMENT FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

IV.  CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT
     OF EXPENSES UNDER THE SETTLEMENT AGREEMENT . . . . . . .   20

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

# TABLE OF AUTHORITIES

## Cases

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945)................................................................... 17

*Ansoumana v. Gristede's Operating Corp,* 201 F.R.D. 81 (S.D.N.Y. 2001)............. 10, 13

*Applegate-Walton, et al. v. Olan Mills, Inc.,* Civil Case Number:
    3:10-cv-00224 (M.D. Tenn.)........................................................................................ 14

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
    493 F.3d 110, 111-12 (2d Cir. 2007) ............................................................................ 5

*Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272
    (S.D.N.Y. Mar. 30, 2007) ............................................................................................ 6

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ............................ 10

*Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472 (1980).................................................... 16

*Carter v. West Publ'g Co.*, 1999 U.S. LEXIS 8231 (M.D. Fla. May 20, 1999),
    *rev'd on other grounds*, 225 F.3d 1258 (11th Cir. 2000) ............................................ 14

*Cohen v. Apache Corp.*, No. 89 Civ. 0076, *1993 U.S. Dist. LEXIS 5211*
    (S.D.N.Y. Apr. 21, 1993)............................................................................................ 16

*Danieli v. IBM*, No. 08 Civ. 3688, 2009 U.S. Dist. LEXIS 106938
    (S.D.N.Y. Nov. 16, 2009) ............................................................................................ 15

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ........................................... 3, 18

*Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ................................................... 11

*Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968), *reversed and
    remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970) ........................................... 18

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ......................... 3, 15, 18

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist.
    LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) .................................................................... 15

*Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000)............................... passim

*Grace v. Ludwig,* 484 F.2d 1262 (2d Cir. 1973), *cert denied*, 416 U.S. 905,
    94 S. Ct. 1610 (1974)................................................................................................... 18

*Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ........................................................................ 19

*In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................... 5

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (2000) ................. 12

*In re Boesky Sec. Litig.*, 888 F. Supp. 551 (S.D.N.Y. 1995) ........................................... 19

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ................................................ 5

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ............................................ 6

*In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007) .................................................................... 15

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........... 6, 13

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180 (S.D.N.Y. 2003) .... 20

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) .................................................................... 15

*In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) ........... 4

*In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007) ........................................................................................ 5, 6

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996) .............. 10

*In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 4, 2008) ............................................................................................ 5, 6

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .......................... 5, 17

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) .................................................................. 18

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) ................................................ 6

*Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ............................................................................ 3, 4, 13, 16

*Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................ 4, 16

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) ...................... 16

*McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ................................... 4

*McMahon v. Olivier Cheng Catering & Events, LLC*, 08 Civ. 8713 (PGG),
2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010) ........................................ 3, 4, 5

*Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993)......................... 20

*Mohney v. Shelly's Prime Steak*, 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899
(S.D.N.Y. Mar. 31, 2009) ...................................................................................... 4, 16

*Oliver v. Aegis Commc'ns Group, Inc.*, No. 08 Civ. 828 (N.D. Tex. Jan. 22, 2010) ....... 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................. 17, 18

*Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277
(S.D.N.Y. May 28, 2009).................................................................................. 4, 13, 16

*Savoie v. Merchs. Bank*, 166 F.3d 456 (2d Cir. 1999)................................................. 6, 19

*Signorelli v. Utiliquest, LLC*, No. 08 Civ. 38 (M.D. Fla. Apr. 7, 2008).................... 14, 15

*Stahl v. MasTec N. Am., Inc.,* No. 05 Civ. 1265 (M.D. Fla. Dec. 12, 2007) .................... 14

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008 U.S. Dist.
LEXIS 53872 (W.D.N.Y. June 28, 2008)...................................................................... 16

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254
(S.D.N.Y. 2003).............................................................................................................. 4

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ........................................ 4

*Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144
(S.D.N.Y. Jan. 31, 2007)............................................................................................... 13

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist.
LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ..................................................................... 13

*Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205
(S.D.N.Y. Nov. 6, 2000) .................................................................................................. 6

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS
46223 (S.D.N.Y. June 22, 2007).......................................................................... 5, 6, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................ 4, 5

*Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999)............ 17

*Westerfield v. Wash. Mut. Bank*, Nos. 06-CV-2817, 08 Civ. 00287,
2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 8, 2009)................................................. 4

**Statutes**

29 U.S.C. § 216(b) ......................................................................................... 10

Federal Rule of Civil Procedure 23 ............................................................... 10

## I.    __INTRODUCTION__

On July 22, 2010, this Court granted preliminary approval of the proposed

settlement of the captioned case, provisional certification of the settlement class,

appointment of Plaintiffs' Counsel as Class Counsel, and approval of Plaintiffs' Notice of

Settlement and Class Action Settlement Procedure. (*See,* Dkt. 36.)  Support for the

Settlement has been substantial:  126 of 183 potential Class Members filed claim forms

(68.30%) and no objections or opt-out notices have been received. (Declaration of Sam J.

Smith in Support of Unopposed Motions for Final Approval, for Approval of Attorneys'

Fees and for Service Awards (hereinafter "S. Smith Decl."), filed concurrently herewith,

¶ 18.)  At this point, Court-appointed Class Counsel respectfully move this Court for an

award of attorneys' fees in the amount of thirty-three and one-third (33 1/3%) of the

Settlement Fund (the "Fund") and reimbursement from the Fund of $8,229.21 in out-of-

pocket expenses, which Class Counsel incurred in successfully prosecuting the claims in

this action.  Class Counsels' fee request is made in connection with the Plaintiffs'

Unopposed Motion for Certification of the Settlement Class, Final Approval of the class

Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"),

filed concurrently herewith.[1]

Class Counsel spent more than 1,299.8 hours in attorney and support staff hours

since it began investigating and prosecuting this case in January 2008. (*See*, Declaration

of Sam J. Smith in Support of Unopposed Motions for Final Approval, for Approval of

Attorneys' Fees and for Service Awards, filed contemporaneously herewith (hereinafter,

"S. Smith Decl.") ¶ 5-9)  Multiplied by the hourly rate of each attorney and support staff

---

[1]  The Memorandum of Law filed in Support of Plaintiffs' Unopposed Motion for Final Approval contains
a detailed account of the factual and procedural background of this case, including the settlement
negotiations and administration.

member, this results in a lodestar amount of approximately $616,542.50. (*See*, S. Smith Decl., ¶ 9)  Class Counsel's request for 33 1/3% of the Fund or $325,000 is only 53 percent of the calculated lodestar amount.  This is a significant reduction from the amount that could be awarded under a statutory fee analysis.

Class Counsel's efforts to date have been without compensation and their entitlement to be paid has been wholly contingent upon achieving a good result. (*See*, S. Smith Decl., ¶¶ 11-12)  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and their request for costs are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded.

## II.     CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF THIRTY-THREE AND ONE-THIRD PERCENT OF THE SETTLEMENT FUND.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime on behalf of this Class of locators.  The Settlement Agreement, which has been preliminarily approved by the Court, provides that Defendants will not oppose Class Counsels' petition at the Final Fairness hearing for an "an award of attorneys' fees of no more than 33 and 1/3 % of the Settlement Amount, and for reimbursement of their actual litigation expenses and costs to be paid from the QSF." (*See*, Dkt. 32-6, § 3.2A)  The Class Members were advised accordingly in the Court-approved Notice of Settlement ("Notice"):  "Class Counsel will ask the Court to approve payment of up to $325,000.00 (33 1/3% of the settlement fund established by Defendants) to them for attorneys' fees plus litigation expenses and costs to be paid from the settlement fund." (*See,* Declaration of Claims Administrator (hereinafter "Claims

Administrator Decl."), attached to S. Smith Decl. as Exh. 3, ¶ 6, Exh. A, ¶ 17).   The

attorneys' fees, expenses and costs are to be paid in two equal payments with the first

payment being made within 10 days after the Final Effective Date and the second

payment being made within ten days after March 1, 2011 or 10 days after the Final

Effective Date if it is later than March 1, 2011.  (*See* Dkt. 32-6 (Settlement Agreement) §

3.2 (C))  A substantial number of potential Class Members, 126 of 183, filed claim forms

(68.85%) and no objections or opt-out notices have been received. (S. Smith Decl., ¶ 18)

**A.**     **THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND CIRCUIT FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES**

In wage and hour class action lawsuits, public policy favors a common fund

attorneys' fee award.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y.

2005).  Where relatively small claims can only be prosecuted through aggregate litigation

and the law relies on prosecution by "private attorneys general," *Deposit Guar. Nat'l

Bank v. Roper*, 445 U.S. 326, 338-39 (1980), attorneys who fill the private attorney

general role must be adequately compensated for their efforts.  *McMahon v. Olivier

Cheng Catering & Events, LLC*, 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at

*19-20 (S.D.N.Y. Mar. 3, 2010); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010

U.S. Dist. LEXIS 4067, at *22-23 (E.D.N.Y. Jan. 20, 2010).  If not, wage and hour

abuses would go without remedy because attorneys would be unwilling to take on the

risk.  *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000)

(commending the general "sentiment in favor of providing lawyers with sufficient

incentive to bring common fund cases that serve the public interest").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."); *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *6; *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22 (following the "trend" and awarding 33% of the fund); *Westerfield v. Wash. Mut. Bank*, Nos. 06-CV-2817, 08 Civ. 00287, 2009 U.S. Dist. LEXIS 94544, at *13-14 (E.D.N.Y. Oct. 8, 2009) (adopting the percentage of the fund method); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *11-12 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak*, 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).[2]

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396

---

[2]  A majority of courts in other circuits have also approved and favored the percentage method in common fund cases.  *See Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

F.3d at 122; *Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

 The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)).  This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  493 F.3d 110, 111-12 (2d Cir. 2007).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method.  *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *21**.**

 Second, the percentage of the fund method promotes early resolution.  It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation."  *Wal-Mart Stores*, 396 F.3d at 122; *see also In re Ramp Corp. Sec. Litig.*,

*2008 U.S. Dist. LEXIS 213, at *8; *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6; *Velez*, 2007 U.S. Dist. LEXIS 46223, at *24.  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *Karpus v. Borelli (In re Interpublic Sec. Litig.*), No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."  *Id.* (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  *Goldberger*, 209 F.3d at 48-49; *see also In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, at *8 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *48-49 (S.D.N.Y. July 27, 2007); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *11 (S.D.N.Y. Mar. 30, 2007).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to rigorously scrutinize the fee records.  *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

**B.     THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION**

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)     the time and labor expended by counsel;

(2)     the magnitude and complexities of the litigation;

(3)     the risk of litigation;

(4)     the quality of representation;

(5)     the requested fee in relation to the settlement; and

(6)     public policy considerations.

209 F.3d at 50 (quotations omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

**1.     Class Counsel's Time and Labor**

Since beginning its investigation and evaluation of claims in January 2008, Class Counsel expended substantial time and effort to achieve the $975,000 settlement on behalf of the Class.

Before filing this action, Class Counsel conducted a thorough investigation into the potential claims and defenses. (*See*, Dkt. 32 ¶ 11.)  Class Counsel interviewed more than thirty current and former Locators and Locator Helpers employed by Eastern, as well as former supervisors employed by Eastern, to determine the hours that Locators and Locator Helpers worked, the wages they were paid, their job duties, and other information relevant to their claims.  (*Id.*  ¶ 12.)  From these interviews, Class Counsel prepared detailed declarations describing the claims of Locators and Locator Helpers

7

intended to support the allegations in the complaint in the event it was filed. (*Id.* ¶ 12.)
In addition, Plaintiffs' Counsel solicited and reviewed records from the United States
Department of Labor and the New York Department of Labor related to other complaints
against Eastern and related investigations. (*Id.* ¶ 13.)

On July 24, 2009, the parties agreed to enter into an agreement to toll the
limitations period of the FLSA and New York wage and hour claims of all Locators and
Locator Helpers employed by Eastern from July 3, 2003 to the present. (*Id.* ¶ 14.) The
parties also entered into a confidentiality agreement to facilitate an exchange of
information, documents, and payroll data. (*Id.* ¶ 14.) Eastern produced weekly locate
logs, attendance records, and payroll data for the four Locators and Locator Helpers
identified in the draft complaint and for 25% of the Locators and Locator Helpers it
employed during the sample year 2006. (*Id.* ¶ 15.) Based upon an analysis of the sample
data produced by Eastern and the extensive data collected from Plaintiffs and other Class
Members, Class Counsel created a damage model that incorporated the average hours
allegedly worked and the rates of pay of the Locators and Locator Helpers. (*Id.* ¶ 15.)
Class Counsel also analyzed Eastern's financial statements for multiple periods to
evaluate Eastern's financial condition and ability to fund a settlement or satisfy a
judgment. (*Id.* ¶ 16.)

The parties agreed to attempt to resolve this matter through non-binding private
mediation with experienced class action mediator Hunter Hughes of Rogers & Hardin
LLP in Atlanta, Georgia. (*Id.* ¶ 18.) The parties participated in a full day of mediation on
January 5, 2010. (*Id.* ¶ 19.) At the conclusion of the mediation, the parties reached
agreement on the material terms of the settlement. (*Id.* ¶ 19.)

Over the next several weeks, the parties agreed upon an allocation formula  (*Id.* ¶ 20.)  On May 10, 2010, the parties executed a detailed Settlement Agreement memorializing the terms agreed upon at mediation.  (*Id.* ¶ 20.)  At all times during the settlement negotiations, negotiations were conducted on an arm's-length basis.  (*Id.* ¶ 21.)

On July 1, 2010, Plaintiffs filed their Motion for Preliminary Approval of Settlement in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class. (*See,* Dkt. 30-32.)  On July 22, 2010, the Court granted Plaintiffs' Motion for Preliminary Approval. (*See,* Dkt. 36.)   During the claims-filing period, Class Counsel spent a substantial amount of time discussing the proposed settlement with Class Members and conferring with the Claims Administrator and opposing counsel regarding the allocation of funds and various administrative matters. (S. Smith Decl., ¶ 10)

Class Counsel utilized attorneys and support staff in a manner designed to minimize duplication of efforts and maximize billing judgment.  Class counsel also made diligent efforts to have work performed by the attorney or support staff member with the lowest hourly rate who was able to perform the work effectively. (*Id.* ¶ 8.)

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that Class Counsel will be required to spend administering the settlement in the future.  (*Id.* ¶ 10)  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  (*Id.*)  For example, many Class Members are likely to have questions regarding the settlement payments.  (*Id.*)

2.      **Magnitude and Complexity of the Litigation**

This Class action will resolve the claims of 183 Locators.  The size of the Class and the complexity of the factual and legal questions involved further support the reasonableness of the requested fee award.  Under the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).

Courts have recognized that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . .  These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).  Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as ("opt out") class actions pursuant to Federal Rule of Civil Procedure 23, in the same action as the FLSA collective action ("opt in") mechanism pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts are being applied and analyzed similarly under both statutory frameworks, justice is served by having the litigation in one forum for consistency and efficiency.  *See Ansoumana v. Gristede's Operating Corp,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001).  However, hybrid cases require complex questions of law because federal and state wage and hour laws are at issue.

At all times during the settlement negotiations, negotiations were conducted on an arm's-length basis.  (Dkt. 32, ¶ 21.)  Counsel reviewed a substantial amount of data to value the Class Members' claims under New York and federal wage and hour law as well

as in assessing Eastern's defenses.  The second *Goldberger* factor strongly supports

approving Class Counsel's attorneys' fee request.

### 3.   <u>Risk of Litigation</u>

The risk of litigation is also an important factor in determining a fee award.

Uncertainty that a recovery will be obtained is highly relevant in determining the

reasonableness of an award.  *Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974) .

"[D]espite the most rigorous and competent of efforts, success is never guaranteed."  *Id.*

at 471.

Class Counsel undertook to prosecute this action without any assurance of

payment for their services, litigating this case on a wholly contingent basis in the face of

tremendous risk.  (S. Smith Decl., ¶ 11)  Large-scale wage and hour cases of this type are,

by their very nature, complicated and time-consuming.  (*Id.*)  Any lawyer undertaking

representation of large numbers of affected employees in such actions inevitably must be

prepared to make a tremendous investment of time, energy, and resources.  (*Id.*)  Due

also to the contingent nature of the customary fee arrangement, lawyers are asked to be

prepared to make this investment with the very real possibility of an unsuccessful

outcome and no fee of any kind.  (*Id.*)  Class Counsel stood to gain nothing in the event

the case was unsuccessful.  (*Id.*)  To date, Class Counsel have worked without

compensation of any kind, and the fee has been wholly contingent upon the result

achieved.  (*Id.* ¶ 12.)

Although Plaintiffs believe their case is strong, it is subject to risk as to liability

and damages as well as considerable risk with respect to Eastern's ability to satisfy a

judgment.  (*Id.* ¶ 13.)  In weighing the risks of establishing liability and damages, the

court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*80 F. Supp. 2d 164, 177 (2000) (internal quotations omitted).  A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and the NYLL.  (S. Smith Decl., ¶ 13).  Eastern argued that it already paid its employees in compliance with state and federal wage and hour laws by establishing a threshold base rate and paying an enhanced rate for locates performed in excess of this base threshold.  It also contended it contacted government authorities charged with enforcing applicable wage and hour laws and was informed its pay plan was in compliance with the law.  Further, Eastern alleged that individual estimates of hours worked could not be substantiated through documentary evidence because no time records were kept, and that Plaintiffs' estimates of hours worked would not be sustained at trial.  Finally, Eastern alleged and demonstrated that its ability to satisfy a judgment, should Plaintiffs be successful, was limited by its tenuous financial condition. (*Id.*)

While Plaintiffs believe that their claims are meritorious, their counsel are experienced and realistic, and understand that the resolution of liability and damage issues, the outcome of the trial, and the appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates this uncertainty.  This factor, too, weighs in favor of preliminary approval.

Despite these risks, Class Counsel secured a substantial settlement.  No Class Members objected to the result of Class Counsel's efforts. (Claims Administrator Decl., Exh. A ¶ 17).  Accordingly, the risk of litigation weighs in favor of Class Counsel's request for attorneys' fees.

###### 4.    Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

The $975,000 settlement amount represents a good value given the substantial risks that plaintiffs' would have had difficulty proving their hours worked in litigation and that Defendant provided evidence that it would be unable to pay the full value of a judgment.  (S. Smith Decl., ¶ 13).  None of the Class Members have objected to the proposed recovery.  The settlement also provides recovery to Class Members without the uncertainty and delay of trial.

Class Counsel's experience also weighs in favor of approving their requested fees. Outten & Golden ("O&G") has substantial experience prosecuting large-scale wage and hour actions such as this Litigation. (*See* S. Smith Decl. ¶ 7 and accompanying exhibit.) *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *21 (noting that O&G has "substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *7 ("[O&G] 'has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area.'"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *49 (S.D.N.Y. Sept. 29, 2006) ("[O&G] is qualified, experienced, and generally able to conduct the [class wage and hour] litigation.") (internal quotations omitted); *Ansoumana*,

13

201 F.R.D. at 87 (O&G is "experienced and well-qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class litigation").

Burr & Smith, LLP has also repeatedly been found to have the necessary expertise to be appointed class counsel in these types of actions. *See, e.g., Applegate-Walton, et al. v. Olan Mills, Inc.,* Civil Case Number: 3:10-cv-00224**,** Middle District of Tennessee (Ashville Division), ¶ 12 (designating Burr & Smith as Class Counsel and recognizing that it has extensive knowledge in litigating wage and hour collective and class actions, is familiar with the complex factual and legal questions at issue in this case, and will adequately represent the Plaintiffs and proposed class members in a comprehensive and vigorous manner); *Signorelli v. Utiliquest, LLC,* No. 08 Civ. 38, Dkt. No. 27 at 4 (M.D. Fla. Apr. 7, 2008) (designating Burr & Smith and Lee & Braziel as Class Counsel and noting that "Class Counsel has extensive knowledge in litigating wage and hour collective and class actions such as this, is familiar with the complex factual and legal questions at issue in this case, and will adequately represent the Plaintiffs and proposed class members in a comprehensive and vigorous manner") (Exhibit A); *Stahl v. MasTec N. Am., Inc.,* No. 05 Civ. 1265, Dkt. No. 135 at 4 (M.D. Fla. Dec. 12, 2007) (Exhibit B); *Carter v. West Publ'g Co.*, 1999 U.S. LEXIS 8231 (M.D. Fla. May 20, 1999), *rev'd on other grounds*, 225 F.3d 1258 (11th Cir. 2000). (*See*, Dkt. 32, ¶ 8.)

Likewise, courts have repeatedly found Lee & Braziel, LLP to have the experience and expertise to serve as class counsel in wage and hour class actions. (*See*, S. Smith Decl. ¶ 9 and accompanying exhibit.) See*, e.g.*, *Oliver v. Aegis Commc'ns Group, Inc.*, No. 08 Civ. 828, Dkt. No. 88 (N.D. Tex. Jan. 22, 2010) (Exhibit C); *Danieli*

*v. IBM*, No. 08 Civ. 3688, 2009 U.S. Dist. LEXIS 106938, at *9-10 (S.D.N.Y. Nov. 16, 2009); *Signorelli,* Dkt. No. 27 at 4 (Exhibit A).

Class Counsel's skill and experience directly brought about the favorable settlement on behalf of Class Members and weighs in favor of granting the requested fees. *See Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 31% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### 5.    Fee in Relation to the Settlement

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at *52 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (*quoting In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *20 (S.D.N.Y. Sept. 26, 2003)) (internal quotation marks omitted). No such "windfall" is possible in this case because each class member will receive a pre-determined payment based on an agreed-upon formula and will not receive additional amounts in excess his/her assigned share due to the reallocation of unclaimed funds. (Dkt. 32-6, ¶ 3.4.)

Class Counsel's one-third (33 1/3%) fee request is "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (granting one-third of the

settlement fund).  Courts in this Circuit routinely grant requests of one-third of substantial

settlement funds and should also do so from the $975,000 fund here.  *See Khait*, 2010

U.S. Dist. LEXIS 4067, at *4, 23-25 (granting O&G 33% of $9,250,000 fund in FLSA

and multistate wage and hour law case); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *2-3, 11

(awarding 33% of $710,000 fund in FLSA and NYLL tip misappropriation case);

*Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13, 16-17 (awarding 33% of $3,265,000 fund

in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008

U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million

fund in FLSA and NYLL case); *see also Maley*, 186 F. Supp. 2d at 370 (awarding 33

1/3% fee on fund valued at $11.5 million in securities class action); *Cohen v. Apache

Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993)

(awarding 33 1/3% of the $6.75 million fund in securities class action).

 In this case, Class Members were informed in the Notice that "Class Counsel will

ask the Court to approve payment of up to $325,000.00 (33 1/3% of the settlement fund

established by Defendants) to them for attorneys' fees plus litigation expenses and costs

to be paid from the settlement fund." (*See,* Claims Administrator Decl., Exh. A, ¶ 17)

No objections were received to the proposed attorneys' fees. (*See*, *id.*. ¶¶ 9, 13.)  The

Supreme Court and the Second Circuit have held that it is appropriate that the attorneys'

fees be awarded on the entire maximum gross settlement fund even where amounts to be

paid to settlement class members who do not file claims form will revert to the

Defendants.  *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980) and

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) (holding that

attorneys' fees awarded as a percentage of a common fund must take into consideration

the entirety of the fund not only that portion received directly by class members).   In *Masters*, the Second Circuit recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not."  *Id.* at 437*; see also, Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999).

In this case, Class Counsel's efforts resulted in a common fund of $975,000. (*See,* Dkt. 32-6 ¶ 3.1(D).)  Class Counsel's total lodestar in this case is $616,542.50, nearly double the amount it is requesting from the Settlement Fund.  (*See* S. Smith Decl. ¶ 9). Class Counsel's request for $325,000 is only approximately 53 percent of its lodestar. Based on the total hours worked by all three firms of 1299.8 hours, this fee represents an average of approximately $250/hour.  By only seeking a $325,000 common-fund fee in this case instead of statutory fees, Class Counsel have significantly compromised their fee request. (*Id.*)

### 6.   Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees.   In awarding attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The Fair Labor Standards Act and state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's

pay for a fair day's work").   Fair compensation for attorneys who take on such litigation

furthers the remedial purpose of the statutes.

Courts have recognized that fee awards in cases like this serve the dual purpose of

encouraging "private attorneys general" to seek redress for violations and discourage

future misconduct of a similar nature.  *See Roper*, 445 U.S. at 338-39; *see also Dolgow v.*

*Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other*

*grounds*, 438 F.2d 825 (2d Cir. 1970).  Class actions are also an invaluable safeguard of

public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case*

*Co. v. Borak*, 377 U.S. 426, 433-34 (1964).  Particularly where, as here, the settlement

fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will]

likely . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys'

fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]"

*Id*.  Courts, therefore, look with favor upon awarding attorney fees in class actions that

"encourage the vigilance of private attorneys general to provide corporate therapy

protecting the public investor who might otherwise be victimized." *Grace v. Ludwig,* 484

F.2d 1262, 1267 (2d Cir. 1973), *cert denied*, 416 U.S. 905, 94 S. Ct. 1610 (1974) .

In this case, public policy considerations weigh heavily in favor of awarding

Class Counsel's requested fee.  The violations complained of are of long-standing

duration.  The award of the requested fees may discourage similar violations, encourage

the prosecution of claims and further a significant public interest goal.

**III.** **THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD**
**TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.**

Following *Goldberger*, courts usually apply the percentage method and loosely

use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50.

As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 19, 2005). Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.* Class Counsel spent more than 1,299.8 hours in investigating the facts, analyzing the law, presenting the claims, analyzing the damages, assessing the defenses, negotiating the settlement, documenting the settlement terms, presenting the settlement to the Court, and working with the Claims Administrator and opposing counsel finalizing the resolution of this matter. (S. Smith Decl., ¶ 9) The total hours worked by Class Counsel result in a lodestar of more than $616,542.50. (*Id.*)

Class Counsel's request for $325,000 or one-third of the Settlement Fund is only approximately 53 percent of its actual lodestar of $616,542.50. (*Id.*) This fee represents an average of approximately $250/hour. By only seeking a $325,000 common-fund fee in this case instead of statutory fees in the amount of their lodestar, Class Counsel have significantly compromised their fee request. (*Id.*)

**IV.     CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF
<u>EXPENSES UNDER THE SETTLEMENT AGREEMENT</u>.**

Class Counsel request their actual expenses in the amount of $8,229.21 to be paid

from the Fund.  (S. Smith Decl., ¶¶ 5-7, 9)  Apart from the costs of class administration,

the expenses in this matter have been minimal.  "Attorneys may be compensated for

reasonable out-of-pocket expenses incurred and customarily charged to their clients, as

long as they were 'incidental and necessary to the representation' of those clients."  *In re*

*Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)

(citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

Here, Class Counsel's un-reimbursed expenses were incidental and necessary to the

representation of the Class.  (S. Smith Decl., ¶ 9)  They include costs for postage, travel

and transportation, working meals, photocopies, legal research, the mediator's fees, court

fees, and other expenses.  (*Id.*).

**V.      <u>CONCLUSION</u>**

For the reasons set forth above, Class Counsel respectfully request that the Court

grant Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement

of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of one-third

(33 1/3%) of the Fund; and (ii) reimbursing from the Fund the $8,229.21 in out-of-pocket

expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

Dated: October 18, 2010                    Respectfully submitted,

                                           **BURR & SMITH, LLP**


                                             /s/ Sam J. Smith
                                           Sam J. Smith

                                           **Burr & Smith, LLP**
                                           Sam J. Smith (admitted *pro hac vice*)
                                           Marguerite M. Longoria (admitted
                                           *pro hac vice*)
                                           442 W. Kennedy Blvd., Suite 300
                                           Tampa, Florida 33606
                                           Telephone:  (813) 253-2010

                                           **Outten & Golden LLP**
                                           Justin M. Swartz
                                           Ossai Miazad
                                           Jennifer L. Liu
                                           3 Park Avenue, 29th Floor
                                           New York, New York 10016
                                           Telephone:  (212) 245-1000

                                           **Lee & Braziel, LLP**
                                           J. Derek Braziel (admitted *pro hac
                                           vice*)
                                           Meredith Matthews (admitted *pro
                                           hac vice*)
                                           1801 North Lamar Street, Suite 325
                                           Dallas, Texas 75202
                                           Telephone: (214) 749-1400